LOAN NUMBER: ██████

# NOTE

May 28, 1999           PLYMOUTH MEETING           PENNSYLVANIA
[Date]                   [City]                   [State]

3029 SOUTH 70TH STREET
PHILADELPHIA, PA  19151
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 61,200.00      (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
FIRST FRANKLIN FINANCIAL CORPORATION,
A DELAWARE CORPORATION
     . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    11.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1st      day of each month beginning on    July 01           , 1999      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on June 01, 2029            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3 ADA STREET
IRVINE, CA  92618          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 594.41         .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**MULTISTATE FIXED RATE NOTE** - Single Family - FNMA/FHLMC Uniform Instrument

VMP -5R (9105).04

Form 3200 12/83
Amended 5/91

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 2      Initials:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THE PREPAYMENT NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF AMENDS THE PREPAYMENT PROVISIONS OF THIS NOTE.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
DOUGLAS ROBINSON    -Borrower     SIMONA ROBINSON    -Borrower

_____ (Seal)     _____ (Seal)
                    -Borrower                         -Borrower
SSN:                        SSN:

*[Sign Original Only]*

-5R (9105).04    Page 2 of 2    Form 3200 12/83

PAY TO THE ORDER OF **NationsCredit** Financial Services Corporation

WITHOUT RECOURSE
UBT OF FRANKLIN FINANCIAL CORPORATION
Wendy Krško
Loan Account Manager

WITHOUT RECOURSE
PAY TO THE ORDER OF

NationsCredit Financial Services Corporation
By _____
D. J. MINTON, VP

# PREPAYMENT NOTE ADDENDUM

This prepayment Note Addendum is made this **28th day of MAY, 1999**, and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") given by the undersigned (the "Borrower") to evidence Borrower's indebtedness to

**FIRST FRANKLIN FINANCIAL CORPORATION,**
**A DELAWARE CORPORATION**

, (the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date and covering the property described in the Security Instrument and located at:

**3029 SOUTH 70TH STREET**
**PHILADELPHIA, PA  19151**

**ADDITIONAL COVENANTS.**  Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

1.       Section 4 of the Fixed Rate Note, is modified to provide for a prepayment charge upon Borrower's full prepayment.  A "full prepayment" is the prepayment of all of the unpaid principal due under the Note.  A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, Borrower may make a full prepayment or a partial prepayment at any time without paying any charge.  However, if within the first  **3**  year(s) after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge on the prepayment of that amount of principal which exceeds 20% of the principal amount stated in the Note (the "Excess Principal").  The prepayment charge will equal the interest that would accrue during a six-month period on the Excess Principal calculated at the rate of interest in effect under the terms of the Note at the time of the full prepayment.

2.       All other provisions of the Note are unchanged by this addendum and remain in full force and effect.

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it.  The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in the Prepayment Note Addendum.

X _____          _5-28-99_
DOUGLAS ROBINSON                                          DATE

X _____          _5/28/99_
SIMONA ROBINSON                                            DATE

---

Fixed Rate Prepayment Note Addendum - First Lien - AL, AZ, AR, CA, CO, CT, DE, FL, GA, HI, ID, IL, IN, IA, KS, KY, LA, MT, NB, NV, NH, NY, NC, ND, OK, OR, PA, SC, SD, TN, TX, UT, WA, WY



## Document Detail

| | | | |
|---|---|---|---|
| **Document ID:** 49090330 | | **Receipt #:** | |
| **Document Code:** MORTGAGE | | | |
| **Recording Date:** 06/10/1999 | | | |
| **Recording Time:** 08:00A | | | |
| **Number of Pages:** null | | **Book:** 2033 | |
| **Document Date:** N/A | | **Page:** 307 | |

| Grantor | Grantee |
|---|---|
| ROBINSON DOUGLAS<br>ROBINSON SIMONA | FIRST FRANKLIN FINANCIAL CORPO |

| Legal Description |
|---|
| House # 3029 Direction S Street Name 70TH Designation ST BRT:████████   BRTSTCD:███████ |

| Misc |
|---|
| OLD DOC TYPE: M<br>COUNTER #: 329<br>MISC FLAGS: VC: V |

| Notes | Return Address | Related |
|---|---|---|
| JTD<br>TR-COUNTER-NO:█████ | - | 49090330<br>████████ |

**New Search**

**Logout**

**Document Image**

Client:
City of Philadelphia
Title:
Department of Records
Connected As:
diane Gulinan
Subscription Expires:
Sun Mar 06 12:27:23 EST 2016

Report Errors

Back

Copyright© 1999-2004 Tyler Technologies, Inc., Eagle Division. All Rights Reserved.
Privacy Policy

M 2033 307

BEST AVAILABLE COPY

Prepared by:
FIRST FRANKLIN FINANCIAL CORPORATION
2150 NORTH FIRST STREET, #600
SAN JOSE, CA 95131
Parcel Number: ███████

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

Loan Number: ███████

THIS MORTGAGE ("Security Instrument") is given on    MAY 28, 1999    . The mortgagor is
DOUGLAS ROBINSON AND SIMONA ROBINSON, HUSBAND AND WIFE, AS JOINT TENANTS

M  C.M.

("Borrower"). This Security Instrument is given to
FIRST FRANKLIN FINANCIAL CORPORATION

which is organized and existing under the laws of    DELAWARE    , and whose
address is 2150 NORTH FIRST STREET, #600
SAN JOSE, CA 95131    ("Lender"). Borrower owes Lender the principal sum of
Sixty-One Thousand Two Hundred  & 00/100

Dollars (U.S. $    61,200.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    JUNE 01, 2029    .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following
described property located in    PHILADELPHIA    County, Pennsylvania:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

which has the address of  3029 SOUTH 70TH STREET, PHILADELPHIA    [Street, City],
Pennsylvania    19151    [Zip Code] ("Property Address");
PENNSYLVANIA-Single Family-FNMA/FHLMC
UNIFORM INSTRUMENT    Form 3039 9/90
Amended 12/96
Page 1 of 8    Initials: DR DnR

M 2033 308

BEST AVAILABLE COPY

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 40th Ward of the City of Philadelphia.

DESCRIBED according to a Survey and Plan of Properties made for New Eastwick Corporation by Albright and Friel, Inc., Consulting Engineers, Philadelphia, Pennsylvania, approved by Maurice H. Goldich, Surveyor and Regulator of the 10th District, dated November 28, 1962, as follows, to wit:

BEGINNING at a point on the northeasterly side of 70th Street, 130 feet wide measured South 40 degrees 32 minutes 30 seconds East along the said northeasterly side of 70th Street, the distance of 126.80 feet from the southeasterly side of Ivis Place, 50 feet wide.

CONTAINING in front or breadth, South 40 degrees 32 minutes 30 seconds East, along the said northeasterly side of 70th Street, 17.970 feet and extending of that width in length or depth, North 49 degrees 27 minutes 30 seconds East, between parallel lines at right angles to the said 70th Street, 96 feet.

THE northwesterly line passing through the center of a party wall between the said premises and the premises adjoining on the northwest and the southwesterly line passing through a party wall between the said premises and the premises adjoining on the southeast.

BEING No. 3029 South 70th Street.

PLOT/PLAN NO. ▟▟▟▟▟        BOARD OF REVISION NO. ▟▟▟▟▟        40TH WARD

BEING the same premises which Bernard E. McDonald, by Indenture dated October 1, 1984 and recorded in the Office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book JAP 20 page 510, granted and conveyed unto Henry James Czuczman.

BEST AVAILABLE COPY

M 2033 309

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

DDS-PA2

Page 2 of 6

Initials

Form 3039  9/30

BEST AVAILABLE COPY

2033 310

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Form 3039   9/90

BEST AVAILABLE COPY

M 2033 311

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender, requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Page 4 of 6

Initials _____

Form 3039    9/80

✦ 2033 312

BEST AVAILABLE COPY

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**24. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

Initials _____

Page 5 of 6

Form 3039  9/90

2033 313

BEST AVAILABLE COPY

**26. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider     ☐ Condominium Rider              ☐ 1-4 Family Rider
☐ Graduated Payment Rider   ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider             ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ VA Rider                  ☒ Other(s) [specify] Prepayment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_M. D'Antonio_

_Douglas M. Robinson_ (Seal)
DOUGLAS ROBINSON              -Borrower

_Simona Robinson_ (Seal)
SIMONA ROBINSON              -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                             -Borrower

**Certificate of Residence**

I, _Christina McDonough_, do hereby certify that the correct address of the within-named Mortgagee is _2150 North First St. #600 San Jose, CA 95131_

Witness my hand this _28th_ day of _May_, _1999_.

_Chris McDe_
Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,**    _Montgomery_   County ss:

On this, the _28th_ day of _May_, _1999_, before me, the undersigned officer, personally appeared _Douglas M. & Simona Robinson_ known to me (or satisfactorily proven) to be the person s whose name s _are_ subscribed to the within instrument and acknowledged that _they_ executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

_M. D'Antonio_

_____
Title of Officer

Notarial Seal
Margaret D'Antonio, Notary Public
Plymouth Twp., Montgomery County
My Commission Expires Nov 29, 2000

Member, Pennsylvania Association of Notaries

Page 6 of 6       Form 3039  9/90

2033 314

BEST AVAILABLE COPY

# PREPAYMENT RIDER

This Prepayment Rider made this **28TH day of MAY, 1999** and is incorporated into and shall be deemed to amend and supplement Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date given by the undersigned (the "Borrower) to secure Borrower's Note (the "Note") to

**FIRST FRANKLIN FINANCIAL CORPORATION**

("the Lender") of the same date and covering the property describe in the Security Instrument and located at:

**3029 SOUTH 70TH STREET
PHILADELPHIA, PA 19151**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Except as provided below, Borrower may make a full prepayment or a partial prepayment of principal at any time without paying any charge. However, if within the first **3** year(s) after the date Borrower executes the Note, Borrower makes a full prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge on the prepayment of that amount of principal which exceeds 20% of the principal amount stated in the Note (the "Excess Principal"). The prepayment charge will equal the interest that would accrue during a six-month period on the Excess Principal calculated at the rate of interest in effect under the terms of the Note at the time of the full prepayment.

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.**

By signing below, Borrower accepts and agrees to the terms and covenants contained in the Prepayment Rider.

| | | |
|---|---|---|
| _Douglas M. Robinson_ | 5/28/99 | (Seal) |
| DOUGLAS ROBINSON M. C. Mr | DATE | |
| _Simona Robinson_ | 5/28/99 | (Seal) |
| SIMONA ROBINSON | DATE | |
| | | (Seal) |
| | | (Seal) |

Fixed Rate Prepayment Rider - First Lien- AL, AZ, AR, CA, CO, CT, DE, FL, GA, HI, ID, IL, IN, IA, KS, KY, LA, MT, NB, NV, NH, NY, NC, ND, OK, OR, PA, SC, SD, TN, TX, UT, WA, WY

DDS-PN5

City of Philadelphia Department of Records

# RECORDING INFORMATION SUMMARY (RIS)

| The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes. | RETURN DOCUMENT TO:<br>Name:   Federman and Phelan, LLP<br>Address:   One Penn Center at Suburban, Ste. 1400<br>1617 J.F.K. Blvd., Ste. 1400<br>Philadelphia, PA  19103-1814<br>Attn:  John Caporale |
|---|---|

**1.   Type of Document:**

| | | | | |
|---|---|---|---|---|
| ☐ Deed | ☐ Mortgage | | ☐ Lease/Memorandum of Lease | |
| ☐ Sheriff's Deed | ☐ Release of Mortgage | | ☐ Assignment of Lease & Rent | |
| ☐ Deed of Condemnation | ☒ **Assignment of Mortgage** | | ☐ Easement | |
| ☐ Other Deed | ☐ Satisfaction of Mortgage | | ☐ Other _____ | |
| | | | (specify) | |

**2.   Date of Document:**

<u>05/28/99</u>
month   day   year

**3.   Grantor/Mortgagor/Assignor/Lessor/**          (a.)
Other:                                                         **First Franklin Financial Corporation**
(Last Name, First Name, Middle Initial)
☐   Additional names on Continuation Page of RIS

**4.   Grantee/Mortgagee/Assignee/Lessee/**          (a.)
Other:                                                         **Fairbanks Capital Corporation**
(Last Name, First Name, Middle Initial)
☐   Additional names on Continuation Page of RIS

**5.   Property Address:**

(b.)   House No. & Street Name:   <u>3029 S. 70th St.</u>

Condo Name (if applicable): _____ Unit # __Philadelphia, PA Zip Code **19151**

BRT Account # (optional): _____ **Parcel Identification Number (PIN)** (optional): ████

☐   Additional names on Continuation Page of RIS

**6.   Grantee's Mailing Address (Deed Only):**
(If Grantee is at a different address than the Property Address listed in Section 5, complete this section.)

Grantee or Designee Name: _____

House No. & Street Name: _____

City : _____ State: _____ Zip Code: _____

**7.   Recording information to be Referenced.  Mortgage to be released/satisfied/assigned/modified:**

(a.)   Name of Original Mortgagee:  **First Franklin Financial Corporation**          Recorder's Index Information
of Original Mortgage:
Recording Date of Original Mortgage:
<u>06/10/99</u>                  **Book JTD 2033 and Page 307**
month   day   year          Initials, Book and Page or Doc. ID#

☐   Additional names on Continuation Page of RIS

Optional Information

| | Consolidation | | Subdivision |
|---|---|---|---|

**First Franklin Financial Corporation**
Assignor Name
(215) 563-7000
OR Telephone Number
*John A. Caporale*
Signature (For Assignor)

FOR DEPT USE ONLY

**50670396**
Pg: 1 of 3
05/13/2003 07:18PM

This Document Recorded
05/13/2003
07:18PM
Doc Code: A          Commissioner of Records, City of Philadelphia

Doc Id: 50670396

Rec Fee: 58.50

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that "First Franklin Financial Corporation" hereinafter "Assignor" the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by Fairbanks Capital Corporation, "Assignee" at the time of execution hereof, sell, assign, transfer and set over unto the said Assignee, the receipt whereof is hereby acknowledged, does hereby grant, bargain, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by Simona Robinson and Douglas Robinson to First Franklin Financial Corporation, bearing the date 05/28/99, in the amount of $61,200.00, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on 06/10/99 in the County of Philadelphia, Commonwealth of Pennsylvania, in Mortgage Book JTD2033 Page 307, .
Being Known as Premises: 3029 S. 70th St., Philadelphia, PA 19151
Parcel No: ▮▮▮▮▮▮

Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed. Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises hereby granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said "Assignor" has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 21st day of March, 20 03.

First Franklin Financial Corporation

Matt Feeney
Document Control Officer

By: _____

Sealed and Delivered
in the presence of us;

Attest: _____
Kenneth Ugwuadu
Document Control Officer

State of                    :
                           ss.
County of                   :

On this 27th day of March, 2003, before me, the subscriber, personally appeared Matt Feeney, who acknowledged him/herself to be the Document Control Officer of First Franklin Financial Corporation, and that he/she, as such Document Control Officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

Stamp/Seal:

The precise address of the
within named Assignee is:
338 S. Warminster Rd.
Hatboro, PA 19044
By: _____
    (For Assignee)

After recording return to:
FEDERMAN & PHELAN, L.L.P
One Penn Center
1617 J.F.K. Blvd., Ste.1400
Philadelphia, PA 19103-1814

3/26/03-JHC
George Waidelich

NOTARIAL SEAL
NIKOLE SHELTON, Notary Public
Hatboro Boro, Montgomery County
My Commission Expires May 1, 2006



50670396
Page: 3 of 3
05/13/2003 07:18P

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 40th Ward of the City of Philadelphia.

DESCRIBED according to a Survey and Plan of Properties made for New Eastwick Corporation by Albright and Friel, Inc., Consulting Engineers, Philadelphia, Pennsylvania, approved by Maurice H. Goldich, Surveyor and Regulator of the 10th District, dated November 28, 1962, as follows, to wit:

BEGINNING at a point on the northeasterly side of 70th Street, 130 feet wide measured South 40 degrees 32 minutes 30 seconds East along the said northeasterly side of 70th Street, the distance of 126.80 feet from the southeasterly side of Ivis Place, 50 feet wide.

CONTAINING in front or breadth, South 40 degrees 32 minutes 30 seconds East, along the said northeasterly side of 70th Street, 17.970 feet and extending of that width in length or depth, North 49 degrees 27 minutes 30 seconds East, between parallel lines at right angles to the said 70th Street, 96 feet.

THE northwesterly line passing through the center of a party wall between the said premises and the premises adjoining on the northwest and the southwesterly line passing through a party wall between the said premises and the premises adjoining on the southeast.

BEING No. 3029 South 70th Street.

PLOT/PLAN NO. ███████    BOARD OF REVISION NO. ███████    40TH WARD

BEING the same premises which Bernard E. McDonald, by Indenture dated October 1, 1984 and recorded in the Office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book JRP 20 page 510, granted and conveyed unto Henry James Cruzman.

## RECORDING INFORMATION SUMMARY (RIS)

| The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes. | RETURN DOCUMENT TO:<br>Name:  Federman and Phelan, LLP<br>Address:  One Penn Center at Suburban, Ste. 1400<br>1617 J.F.K. Blvd., Ste. 1400<br>Philadelphia, PA  19103-1814<br>Attn:  Amy Mullen |
|---|---|

**1.   Type of Document:**

| | | | |
|---|---|---|---|
| ☐ Deed | ☐ Mortgage | ☐ Lease/Memorandum of Lease |
| ☐ Sheriff's Deed | ☐ Release of Mortgage | ☐ Assignment of Lease & Rent |
| ☐ Deed of Condemnation | **X  Assignment of Mortgage** | ☐ Easement |
| ☐ Other Deed | ☐ Satisfaction of Mortgage | ☐ Other _____ |
| | | (specify) |

**2.   Date of Document:**
        <u>5/28/ 1999</u>
        month  day   year

**3.   Grantor/Mortgagor/Assignor/Lessor/**        (a.)
        Other:                                **Fairbanks Capital Corp.** _____

        _____
        *(Last Name, First Name, Middle Initial)*
        ☐ Additional names on Continuation Page of RIS

**4.   Grantee/Mortgagee/Assignee/Lessee/**        (a.)
        Other:                                **GMAC Mortgage Corp.** _____

        *(Last Name, First Name, Middle Initial)*
        ☐ Additional names on Continuation Page of RIS

**5.   Property Address:**

(b.)   House No. & Street Name:   <u>3029 S. 70th St.</u>

        Condo Name (if applicable): _____ Unit # _ Philadelphia, PA Zip Code <u>19151</u>

        BRT Account # (optional): _____ **Parcel Identification Number** (PIN) (optional) _____

        ☐ Additional names on Continuation Page of RIS

**6.   Grantee's Mailing Address (Deed Only):**
(If Grantee is at a different address than the Property Address listed in Section 5, complete this section.)

        Grantee or Designee Name: _____

        House No. & Street Name: _____

        City : _____ State: _____ Zip Code: _____

**7.   Recording information to be Referenced.  Mortgage to be released/satisfied/assigned/modified:**

(a.)   Name of Original Mortgagee: **First Franklin Financial Corp.** _____
        Recording Date of Original Mortgage:
        <u>6 / 10 / 1999</u>        <u>2033-307</u> _____
        month    day    year        Initials, Book and Page or Doc. ID#

        Recorder's Index Information
        of Original Mortgage:

        ☐ Additional names on Continuation Page of RIS

### Optional Information

| ☐ Consolidation | ☐ Subdivision |
|---|---|

<u>Fairbanks Capital Corp.</u>
Assignor Name

_____
OR Telephone Number

*A. Mullen*
Signature (For Assignor)

FOR DEPT USE ONLY

**50872479**
**Page: 1 of 3**
02/20/2004 05:18PM

This Document Recorded
02/20/2004
05:18PM
Doc Code: A      Commissioner of Records, City of Philadelphia

Doc Id: 50872479
Rec Fee: 68.50

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **"Fairbanks Capital Corp."** hereinafter **"Assignor"** the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **GMAC Mortgage Corp., "Assignee"** at the time of execution hereof, sell, assign, transfer and set over unto the said Assignee, the receipt whereof is hereby acknowledged, does hereby grant, bargain, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by **Douglas Robinson and Simona Robinson** to First Franklin Financial Corp., bearing the date 5/28/1999, in the amount of **$61,200.00**, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on **6/10/1999** in the County of **Philadelphia**, Commonwealth of Pennsylvania, in Mortgage Book **JTD 2033** Page 307. Mortgage was assigned to **Fairbanks Capital Corp. recorded 5/13/2003 in Doc ID 50670396.**

Being Known as Premises: **3029 South 70th St., Philadelphia, PA 19151**
Parcel No: █████████

Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed. Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises hereby granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said **"Assignor"** has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 6th day of February, 2004.

Fairbanks Capital Corp.

By: _Marianne Cristinzio_

**Marianne Cristinzio**
**Document Control Officer**

Sealed and Delivered
in the presence of us;

State of Pennsylvania        :
                          ss.
County of Montgomery     :

On this 6th day of February, 2004, before me, the subscriber, personally appeared Marianne Cristinzio, who acknowledged him/herself to be the Document Control Officer of **Fairbanks Capital Corp.**, and that he/she, as such Document Control Officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

Stamp/Seal:
COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
April L. Coffman, Notary Public
Abington Twp., Montgomery County
My Commission Expires June 11, 2007

The precise address of the
within named Assignee is:
**500 Enterprise Rd., Ste 150**
**Horsham, PA 19044**
By: _____
(For Assignee)

**After recording return to:**
**FEDERMAN & PHELAN, L.L.P**
**One Penn Center**
**1617 J.F.K. Blvd., Ste.1400**
**Philadelphia, PA 19103-1814**

2/2/04
**Randall Jackson**
████████

50872479
Page: 2 of 3
02/20/2004 05:18P

Effective Date:  12/5/2003

Order Number: ███████
Client Number: ███████

Premises:    3029 SOUTH 70TH STREET
PHILADELPHIA COUNTY, PENNSYLVANIA

Based upon the examination of evidence in the appropriate public records, Company certifies that the premises endorsed hereon are subject to the liens, encumbrances and exceptions to title hereinafter set forth.  This Certificate does not constitute title insurance; liability hereunder is assumed by the Company solely in its capacity as an abstractor for its negligence, mistakes or omissions in a sum not to exceed Two Thousand Dollars.

## DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected. Situate in the 40th Ward of the City of Philadelphia. Described according to a Survey and Plan of Properties made for New Eastwick Corporation by Albright and Friel, Inc., Consulting Engineers, Philadelphia, Pennsylvania, approved by Maurice H. Goldich, Surveyor and Regulator of the 10th District, dated November 28, 1962, as follows, to wit:

BEGINNING at a point on the Northeasterly side of 70th Street, 130 feet wide measured South 40 degrees, 32 minutes, 30 seconds East along the said Northeasterly side of 70th Street, the distance of 126.80 feet from the Southeasterly side of Ivis Place, 50 feet wide.

CONTAINING in front or breadth, South 40 degrees 32 minutes 30 seconds East, along the said Northeasterly side of 70th Street, 17.970 feet and extending of that width in length or depth, North 49 degrees 27 minutes 30 seconds East, between parallel lines at right angles to the said 70th Street, 96 feet.

THE Northwesterly line passing through the center of a party wall between the said premises and the premises adjoining on the Northwest and the Southwesterly line passing through a party wall between the said premises and the premises adjoining on the Southeast.

BEING No. 3029 South 70th Street.

ST. CODE/HOUSE NO.: ███████

CITY REGISTRY: ███████

50872479
Page: 3 of 3
02/20/2004 05:18P

eRecorded in Philadelphia PA  Doc Id: 53084997
07/15/2016 02:50 PM    Page 1 of 3    Rec Fee: $220.00

**Records Department    Doc Code: A**

When Recorded Return To:
OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401

**CORPORATE ASSIGNMENT OF MORTGAGE**

**Philadelphia, Pennsylvania**
**SELLER'S SERVICING** ▓▓▓▓ "ROBINSON"
**SELLER'S LENDER ID#:** ▓▓▓▓
**OLD SERVICING #:** ▓▓▓▓

**COPY**

Date of Assignment:    DEC 2 2 2015

Assignor: GMAC MORTGAGE, LLC SUCCESSOR BY MERGER TO GMAC MORTGAGE
CORPORATION

Assignee: THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK AS SUCCESSOR IN
INTEREST TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSRPM
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-1

I hereby certify the precise address of the within named Assignor is c/o OCWEN LOAN SERVICING, LLC.,
1661 WORTHINGTON RD, SUITE 100, WEST PALM BEACH, FL 33409.

I hereby certify the precise address of the within named Assignee is C/O OCWEN LOAN SERVICING,
LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409.

Executed By: DOUGLAS M. ROBINSON  AND SIMONA ROBINSON , HUSBAND AND WIFE , AS JOINT
TENANTS  To: FIRST FRANKLIN FINANCIAL CORPORATION

Date of Mortgage: 05/28/1999 Recorded: 06/10/1999  in Book/Reel/Liber: 2033 Page/Folio: 307 as
Instrument/Document: 49090330  In the County of Philadelphia, State of Pennsylvania.

Property Address: 3029 SOUTH 70TH STREET, PHILADELPHIA, PA  19151 in the City of Philadelphia

Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

I do certify that the precise address of THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW
YORK AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS
TRUSTEE FOR GSRPM MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2003-1 is C/O
OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL
33409

Attested By: :
_____
Gwen Murakami

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $61,200.00 with interest, secured

53084997   Page 2 of 3   07/15/2016 02:50 PM

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 3

thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

GMAC MORTGAGE, LLC SUCCESSOR BY MERGER TO GMAC MORTGAGE CORPORATION BY OCWEN LOAN SERVICING, LLC, ITS ATTORNEY-IN-FACT
On __DEC 2 2 2015__

COPY

By: _____
Netty N. Bangala
Authorized Signer
POA: 08/26/2014 as Instrument/Document: 52821294

STATE OF FLORIDA
COUNTY OF PALM BEACH

On __DEC 2 2 2015__, before me, __Robert Branch__, a Notary Public in and for PALM BEACH COUNTY in the State of FLORIDA, personally appeared __Netty N. Bangala__, Authorized Signer of OCWEN LOAN SERVICING, LLC., ATTORNEY IN FACT FOR GMAC MORTGAGE, LLC successor by merger to GMAC MORTGAGE CORPORATION, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Robert Branch
Notary Expires: 4/28/19

Notary Public State of Florida
Robert Branch
My Commission ▮▮▮▮▮
Expires 04/28/2019

(This area for notarial seal)

CORPORATE ASSIGNMENT OF MORTGAGE Page 3 of 3

## EXHIBIT "A"

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE in the 40th Ward of the City of Philadelphia.

Described according to a Survey and Plan of Properties made for New Eastwick Corporation by Albright and Friel, Inc., Consulting Engineers, Philadelphia, Pennsylvania, approved by Maurice H. Goldich, Surveyor and Regulator of the 10th District, dated November 28, 1962, as follows, to wit:

BEGINNING at a point on the Northeasterly side of 70th Street, 130 feet wide measured South 40 degrees, 32 minutes, 30 seconds East along the said Northeasterly side of 70th Street, the distance of 126.80 feet from the Southeasterly side of Ivis Place, 50 feet wide.

CONTAINING in front or breadth, South 40 degrees 32 minutes 30 seconds East, along the said Northeasterly side of 70th Street, 17.970 feet and extending of that width in length or depth, North 49 degrees 27 minutes 30 seconds East, between parallel lines at right angles to the said 70th Street, 96 feet.

THE Northwesterly line passing through the center of a party wall between the said premises and the premises adjoining on the Northwest and die Southwesterly line passing through a party wall between the said premises and the premises adjoining on the Southeast.

BEING NO. 3029 SOUTH 70TH STREET.
PLOT/PLAN NO. ▉▉▉▉ BOARD OF REVISION NO. ▉▉▉▉ 40TH WARD

Being the same premises which Bernard E. McDonald, by Indenture dated October 1, 1984 and recorded in the Office of the Recorder of Deeds in and for the County of Philadelphia in Deed Book JAP 20 Page 510, granted and conveyed unto Henry James Czuczman.

<b>EXECUTION VERSION</b>

<u><b>MODIFICATION AGREEMENT</b></u>

**THIS MODIFICATION AGREEMENT** (the "Modification") is made and entered into as of February 1, 2014 between The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank as Trustee for GSRPM 2003-1("Investor"), c/o Ocwen Loan Servicing, LLC ("OLS"), whose address is 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409 and Borrowers ("Borrower") whose address is 3029 South 70th Street, Philadelphia, Pennsylvania 19151. The Modification is as follows:

<u><b>RECITALS</b></u>

A.  On or about May 28, 1999, the predecessor of the Investor loaned $61,200.00 (the "Loan"), which was evidenced by a note dated May 29, 1999, payable to the order of First Franklin Financial Corporation (the "Original Note", a true and correct copy of which is attached hereto as Exhibit "A").

B.  The Original Note is secured by a Mortgage to Secure Debt dated May 28, 1999 and recorded among the official records of the County of Philadelphia on June 10, 1999 as Document Number 000329 (the "Original Mortgage", a true and correct copy of which is attached hereto as Exhibit "B"). **LEGAL DESCRIPTION ATTACHED AS EXHIBIT "C"**

C.  The Original Mortgage grants First Franklin Financial Corporation a security interest in the Property owned by you and described in the Original Mortgage and allows First Franklin Financial Corporation to enforce remedies, including foreclosure of the Property, upon occurrence of a default, including your failure to make payments as agreed under the Original Note.

D.  Investor is now the owner of the Original Note and Original Mortgage (the "Loan Documents") and you agree that the Loan Documents are the only agreements and documents now in effect with respect to the Loan. Any other understandings, agreements or arrangements, which may have existed pertaining to the Loan, are now terminated. **OLS and the Investor shall be collectively referred to as "Ocwen" for purposes of this Modification.**

E.  The parties have agreed that Ocwen shall refrain from exercising the rights and remedies granted to it by the Loan Documents and, instead, agree to modify the terms of your obligations under the Loan Documents pursuant to the terms and conditions set forth in this Modification.

F.  Pursuant to the mutual agreement to modify the Loan Documents, and in consideration of the promises, conditions, and terms set forth below, Ocwen has agreed to adjust the repayment terms of the Original Note, and the total amount due with respect to the Original Note. Ocwen has also agreed to reinstate the Loan as current and not in default as of the Effective Date, as defined below.

<u><b>LOAN MODIFICATION</b></u>

**NOW, THEREFORE**, in consideration of the foregoing recitals which you agree to be true and correct and a part of this Modification, you and Lender agree as follows:

1.  Validity of the Loan Documents: Except as expressly modified by this Modification, the terms and conditions of the Loan Documents remain in full force and effect and the Original Mortgage shall continue to secure the Original Note and this Modification.

1

**EXECUTION VERSION**

2.  The Effective Date:  This Modification is subject to clear title and will be effective on February 1, 2014 on condition that a clear and marketable title policy can be issued.

3.  Modification of Your Obligations: The obligations under the Loan Documents are modified as follows:

   a.  **New Principal Balance**:  The new principal balance now owed with respect to the Loan shall be seventy-seven thousand six hundred twenty-one dollars and twenty-one cents, ($77,621.95) (the "New Principal Balance").

   b.  **Interest Rate**. From the Effective Date of this Modification, the interest on the unpaid New Principal Balance at an annual rate equal to 4.41%.

   c.  **Down Payment**: $781.76 due on February 14, 2014.

   d.  **New Monthly Payment**: The new **total** monthly payment amount will be seven hundred eighty-one dollars and seventy-six cents  ($781.76).  The itemized breakdown of the total monthly payment is as follows:

      i.    Principal and Interest portion of payment   = $581.19.
      ii.   Tax and Insurance portion of payment        = $200.57.

   e.  **Payment Term**: The first New Monthly Payment will be due on March 1, 2014, with all of your subsequent New Monthly Payments due on the first day of each month following this date and continuing until the maturity date on June 1, 2029, when your remaining New Principal Balance, as defined below, including any additional interest, charges, advances, and other fees and costs related to the Loan which Ocwen has not yet collected, will be due.

   f.  **Late Charges**: In the event the New Monthly Payment has not been received within fifteen (15) days of the first day of the month when such New Monthly Payment is due, Borrower agrees to pay a late charge of five percent (5%) of the total New Monthly Payment due.

   g.  **Force Place Insurance:** If you fail to obtain insurance and Ocwen shall be required to force place insurance in order to protect its security interest, then the escrow portion of the total monthly payment may increase.  Additionally, borrower(s) release Ocwen from any liability in connection with said force place insurance being inadequate as to the amount of coverage obtained by Ocwen.

4.  Right to Prepay:  Consistent with the original Note, Mortgage/Deed in Trust.

5.  Escrow Account: If the loan is non-escrowed, then the borrowers are independently responsible for the payment of taxes and insurance and are required to pay both their property taxes and their insurance directly to the appropriate entities. However, whether the loan is escrowed or non-escrowed, in the event the borrowers fail to keep current and pay either their taxes or any type of insurance required for the property either by State Law or by the Ocwen, then Ocwen may advance these amounts to protect its security interest and if necessary, increase the amount of the monthly mortgage payment in order to compensate for the escrow shortage which will occur by said advancement.  Therefore, Ocwen is permitted to impose an escrow impound account upon the subject loan.  Ocwen may at any time collect and hold funds in the escrow account in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrowers' escrow account under the federal Real Estate Settlement Procedures Act of 1974, as amended from time to time, 12 U.S.C. et

2

seq ("RESPA"). Ocwen may estimate the amount of funds due for the escrow account on the basis of current data for any past due amounts and make reasonable estimates for expenditures of future escrow items and adjust Borrowers' monthly payment amount accordingly should it become necessary to do so in the event of non-payment of taxes and insurance. However, the remaining paragraphs of the original note and mortgage regarding payment of taxes and insurance still apply.

6.   Insurance Requirements: The insurance carrier providing the insurance shall be chosen by you subject to Ocwen's approval which shall not be unreasonably withheld. All insurance policies and renewals shall Ocwen's loan number and include a standard mortgagee clause for the benefit of:

> The Bank of New York Mellon f/k/a
> The Bank of New York successor in interest
> to JP Morgan Chase Bank as Trustee for GSRPM 2003-1
> c/o Ocwen Loan Servicing, LLC
> Its Successors and/or Assigns
> 12001 Science Dr. – Suite 110
> Orlando, Florida 32826-2913
> Phone: 407-737-5141
> Fax: 407-737-6144

7.   Additional Events of Default: Without limiting the other events of default set forth in the Loan Documents, you will be in default under this Modification and under the Loan Documents upon the occurrence of any one or more of these events:

   a.   Any material representation or warranty made by you in the Loan Documents, this Modification, or any initial agreement proves to be false or misleading in any respect.

   b.   You fail to make the New Monthly Payments as required by this Modification.

   c.   You sell or convey any interest in the Property without Ocwen's prior written consent.

   d.   Breach of any of the terms or provisions of this Modification.

8.   Consequences of Your Default:  If you default under this Modification or the Loan Documents after the Effective Date (your "Default"), Ocwen may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Modification and exercise any of its rights and remedies against you under the Loan Documents and/or this Modification.

9.   Your Representations and Warranties:  As a material condition to Ocwen's willingness to enter into this Modification, you represent and warrant the following facts:

   a.   That you are indebted to Ocwen pursuant to the terms of the Loan Documents and this Modification, that your Total Debt is accurately set forth in this Loan Modification, paragraphs 3 and 5, above, and that you have no claims, actions, causes of action, statute of limitations or other defenses, counterclaims, or setoffs of any kind, including any claims pursuant to the Federal Truth in Lending Act, which you can assert against The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank as Trustee for GSRPM 2003-1 in connection with the making, closing, administration, collection, or enforcement by The Bank of New York Mellon f/k/a The Bank of New York successor in interest to JP Morgan Chase Bank as Trustee for GSRPM 2003-

3

**EXECUTION VERSION**

of the Loan Documents, this Modification, or any related agreement at any time, past, present or future.

b. You represent and warrant that you have no intention to file or agree to any bankruptcy proceeding at any time after the Effective Date and that you believe the terms of this Modification are sufficient to allow you to comply with your obligations under the Loan Documents and this Modification. In the event that you are or become the subject of a bankruptcy proceeding, you consent to relief from any automatic stay which may be imposed and which would, otherwise, prevent from proceeding with foreclosure in the event you are in Default pursuant to the Loan Documents and/or this Modification.

c. You represent and warrant that all material statements you have made to Ocwen, whether written or oral, all financial information and releases you have provided to Ocwen regarding you or the Property, and all information provided pursuant to any initial agreement you may have signed with Ocwen, remain valid and were true as of the date made and as of the Effective Date.

d. That you understand that this Modification is legally binding and that it affects your rights. You have obtained, or have had the opportunity to obtain, independent legal counsel concerning the meaning and importance of this Modification. You further represent and warrant that you are signing this Modification voluntarily and with full understanding of its contents and meaning.

10. YOUR RELEASE OF OCWEN: IN THE EVENT THAT YOU HAVE ANY CLAIMS, ACTIONS OR CAUSES OF ACTION, STATUTE OF LIMITATIONS OR OTHER DEFENSES, COUNTERCLAIMS OR SETOFFS OF ANY KIND WHICH EXIST AS OF THE DATE OF THIS MODIFICATION, WHETHER KNOWN OR UNKNOWN TO YOU, WHICH YOU NOW OR HEREAFTER MAY ASSERT AGAINST OCWEN IN CONNECTION WITH THE MAKING, CLOSING, ADMINISTRATION, COLLECTION OR THE ENFORCEMENT BY OCWEN OF THE LOAN DOCUMENTS, THIS MODIFICATION OR ANY OTHER RELATED AGREEMENTS, THEN BY EXECUTING THIS MODIFICATION YOU FOREVER IRREVOCABLY WAIVE AND RELINQUISH THEM. OCWEN, INCLUDING THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK SUCCESSOR IN INTEREST TO JP MORGAN CHASE BANK AS TRUSTEE FOR GSRPM 2003-1, SHALL INCLUDE FOR THE PURPOSES OF THIS MODIFICATION, BUT SHALL NOT BE LIMITED TO INVESTOR'S PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, SERVICING AGENTS, AND ALL PRIOR AND SUBSEQUENT PARTIES IN INTEREST, INCLUDING BUT NOT LIMITED TO INVESTOR'S PREDECESSOR(S) IN INTEREST (BUT SHALL NOT INCLUDE ATTORNEYS).

11. Final Agreement: This Modification may not be supplemented, changed, waived, discharged, eliminated, modified or omitted except by written document executed by both you and Ocwen. This Modification and the accompanying Settlement and Release Agreement constitutes the entire agreement between you and Ocwen and, supersedes all previous negotiations and discussions between you, Ocwen and/or Ocwen's predecessors in interest, and neither parole evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Modification.

12. No Novation: You expressly agree that this Modification is not a new loan from Ocwen but simply the modification of your existing obligations under the Loan Documents. Neither you nor Ocwen has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

13. Choice of Law and Severability: This Modification shall be governed by and construed under the laws of the State where the Property is located. If any portion, term or provision of this Modification is held by a court of competent jurisdiction to be illegal or in conflict with such law, the validity of the remaining portions, terms or provision of this Modification shall not be affected, and the rights and obligations of the parties shall be

4

**EXECUTION VERSION**

construed and enforced as if this Modification did not conflict with such law and/or did not contain the portion, term or provision held to be invalid.

14. Successors:   This Modification shall bind the parties' respective successors, assigns, heirs and personal representatives. This Modification shall not be understood to limit in any way the right of Ocwen to sell, or otherwise convey, any interest in the subject obligation to another, provided that such subsequent party in interest is also bound as Ocwen to the terms of this Modification.

15. References:  All references to the singular shall include the plural and all references to one gender herein shall include both genders.

16. Executed in Counterparts:  This Modification may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

17. No Trial By Jury:  BY EXECUTING THIS MODIFICATION, YOU IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS MODIFICATION AND ANY RELATED AGREEMENTS OR DOCUMENTS OR TRANSACTIONS CONTEMPLATED IN THIS MODIFICATION.

18. Payment Instructions:  All payments, unless you are notified by Ocwen in writing of a different address, shall be made to Ocwen at the following address:

> Ocwen Loan Servicing, LLC
> P.O. Box 6440
> Carol Stream, IL  60197-6440

Such payments are to be effected by you, by instructing your bank to make automatic transfer of funds from your checking account on the 5th day of each month.

19. Notices:  All notices should be sent to:

> If to Ocwen:

> > The Bank of New York Mellon f/k/a
> > The Bank of New York successor in interest to
> > JP Morgan Chase Bank as Trustee for GSRPM 2003-1
> > C/o Ocwen Loan Servicing, LLC
> > 12001 Science Dr. – Suite 110
> > Orlando, Florida 32826-2913
> > Phone: 407-737-5141
> > Fax: 407-737-6144

> If to Borrowers:

> > Douglas and Simona Robinson
> > 3029 South 70th Street
> > Philadelphia, PA 19151

20. Time of the Essence:  Time, and Lender's unimpaired security interest in the Property, shall be of the essence as to your obligations under this Modification.

EXECUTION VERSION

WITNESS the following signatures and seals as of the day first written above.

THE BANK OF NEW YORK MELLON F/K/A THE BANK
OF NEW YORK SUCCESSOR IN INTEREST TO JP MORGAN
CHASE BANK AS TRUSTEE FOR GSRPM 2003-1

By: _____
Name: _____
Title: _____

BORROWER

Simona Robinson

BORROWER

Douglas Robinson

6

**EXECUTION VERSION**

STATE OF Pennsylvania )
                      ) ss.
COUNTY OF Philadelphia )

On 11th July , 2014, before me, David Iannacone, a Notary Public in and for said County and State, personally appeared Douglas Robinson , who is "CIRCLE ONE" personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

[NOTARY SEAL]

My Commission Expires:
1/14/12

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
David Iannacone, Notary Public
Uwchlan Twp., Chester County
My Commission Expires Nov. 14, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____
Douglas Robinson

7

**EXECUTION VERSION**

STATE OF Pennsylvania )
                      ) ss.
COUNTY OF Philadelphia )

On 11th July , 2014, before me, David Iannacone, a Notary Public in and for said County and State, personally appeared Simona Robinson , who is "CIRCLE ONE" personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

My Commission Expires:
11/14/1

_____
Notary Public

```
COMMONWEALTH OF PENNSYLVANIA
          Notarial Seal
   David Iannacone, Notary Public
   Uwchlan Twp., Chester County
My Commission Expires Nov. 14, 2017
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES
```

_____
Simona Robinson

STATE OF _____ )
                        ) ss.
COUNTY OF _____ )

On _____, 2014, before me, _____, a Notary Public in and for said County and State, personally appeared _____, who is "CIRCLE ONE" personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

My Commission Expires:

_____
Notary Public

[NOTARY SEAL]

When recorded mail to:
Ocwen Loan Servicing, LLC
12001 Science Dr., Suite 110
Orlando, FL 32826-2913

8

WITNESS the following signatures and seals as of the day first written above.

THE BANK OF NEW YORK MELLON F/K/A THE BANK
OF NEW YORK SUCCESSOR IN INTEREST TO JP MORGAN
CHASE BANK AS TRUSTEE FOR GSRPM 2003-1
By Oewen Loan Servicing, LLC as its attorney-in-fact

By: _____

Name: Jennifer L. Scollard

Title: V.P., Assistant General Counsel

Use the same notary paragraph for all signors

STATE OF _____Pennsylvania_____ )
                                 ) ss.
COUNTY OF Montgomery             )

On August 5, _____, 2014, before me, ____Kelly T. Cunningham____, a Notary Public in and for said
County and State, personally appeared _____, who is "CIRCLE ONE" personally
known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the
within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by
his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.

[NOTARY SEAL]

My Commission Expires:

    2-24-16

_____
Notary Public          Kelly T. Cunningham

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KELLY T. CUNNINGHAM, Notary Public
City of Philadelphia, Phila. County
My Commission Expires February 24, 2016

9